IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| US FLEET TRACKING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-09-1295-L |
| | ) | |
| ADVANCE TRACKING TECHNOLOGIES, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Plaintiff US Fleet Tracking, LLC (plaintiff or "USFleet") filed this case in state court against defendant Advanced Tracking Technologies, Inc. (defendant or "ATTI") seeking damages as well as declaratory and injunctive relief based on alleged breach of contract, deceptive trade practices, and violation of Oklahoma's Consumer Protection Act. The state court action was subsequently removed to this court.

The state court petition, attached as Exhibit 1 to the Notice of Removal [Doc. No. 1]), alleges that USFleet is a corporation organized under Oklahoma law with a principal place of business in Oklahoma City. ATTI is alleged to be a corporation organized under Texas law with its primary place of business in Houston, Texas. The petition alleges that the conduct giving rise to this action occurred in Oklahoma County and the license agreements central to the dispute were entered into in Oklahoma County. Petition, ¶¶ 1-3.

USFleet alleges that it designs and manufactures GPS based tracking units for use with vehicles. Id., ¶ 1. USFleet sells its tracking products primarily through contracted dealers. Id., ¶ 5. On July 31, 2007 USFleet contracted with ATTI to be a dealer for its tracking products. In the Dealer Agreement between the parties, ATTI agreed not to reverse engineer, disassemble, decompile, alter, duplicate, make copies, or create derivative works from USFleet's tracking products. Id., ¶ 6. ATTI also agreed to include specific copyright notices on all USFleet products and to timely pay USFleet invoices for services contracted to customers. Id.

USFleet alleges that on or about June 1, 2009, ATTI introduced a new product, the ATTI Shadow Tracker Vision II ("Vision II"), that is substantially the same as USFleet's tracking device and was marketed using the USFleet website tracking service. Id., ¶ 7. It is alleged that ATTI has marketed the Vision II to USFleet's dealers as a less expensive product that is substantially the same as the USFleet product. Id.

On September 23, 2009, USFleet sent ATTI a letter terminating ATTI's status as a dealer for USFleet products and on October 20, 2009, ATTI responded by letter alleging breach of the contract and threatening action to enforce the contract. Id., ¶ 8. The petition alleges that since its termination as a dealer, ATTI has engaged in contacting customers and informing them that the USFleet product is "obsolete" and "will fail." Id., ¶ 9. ATTI has allegedly suggested

to customers that they will be upgraded to the Vision II. After providing customers with the Vision II free of charge, ATTI subsequently notifies USFleet that the customer's system has been deactivated, terminating the monthly services provided to the customer by USFleet. Id.

Count I (Breach of Contract), alleges that: ATTI's production and offer for sale of the reverse engineered Vision II was improper and a breach of the terms of the Dealer Agreement; that ATTI's failure to include copyright notices on USFleet products was improper and a breach of the Dealer Agreement; that ATTI's repeated failure to timely pay USFleet invoices was improper and a breach of the terms of the Dealer Agreement; and that ATTI's breach has damaged USFleet financially and by reputation and will continue to cause damages. Id., ¶¶ 10-13.

Count II (Deceptive Trade Practices) alleges that ATTI's comments to customers disparaging USFleet's product were unlawful and a violation of the Oklahoma Deceptive Trade Practices Act, 78 O.S. § 51, *et seq.,* and that USFleet has been damaged and is entitled to damages. Id., ¶¶ 14-15.

In Count III (Declaratory Judgment), USFleet seeks a declaration that USFleet's termination of the contract was lawful. Id., ¶¶ 16-17. Count IV (Violation of Consumer Protection Act) states that ATTI's conduct constitutes an unfair trade practice under the Consumer Protection Act, 15 O.S. § 752, *et seq.*, and that USFleet has been damaged and is entitled to damages. Id., ¶¶ 18-19.

Count V (Permanent Injunction) alleges that ATTI's continued comments to and conduct with customers will irreparably harm USFleet's business and reputation. USFleet seeks an injunction commanding ATTI to refrain from selling the allegedly reverse engineered Vision II and from disparaging USFleet's business and products. Id., ¶¶ 20-21.

This matter is before the court on defendant's "Motion to Dismiss for Lack of Personal Jurisdiction and, Subject Thereto, Failure to State a Claim and for Lack of Subject Matter Jurisdiction" **[Doc. No. 17]**. Plaintiff filed a brief in opposition to the motion and defendant filed a reply brief. The court has carefully reviewed the submissions of the parties as well as the allegations of the petition filed in state court. Based upon this review, the court determines that ATTI's motion should be denied.

ATTI argues that the court's exercise of personal jurisdiction over it would violate due process because its contacts with the State of Oklahoma are insufficient to justify the court's exercise of personal jurisdiction. In support of this assertion, ATTI has submitted the sworn Declaration of Paul M. Glass, the President of ATTI, which indicates the following: ATTI is a Texas corporation with its offices and facilities in Houston, Harris County, Texas; ATTI has never had an office in Oklahoma and does not now nor has it ever in the past had a business presence in Oklahoma; ATTI has neither qualified nor sought to qualify to do business in Oklahoma and has no subsidiaries incorporated or qualified to do

business in Oklahoma; none of ATTI's officers or directors reside in or are domiciled in Oklahoma; ATTI has no employees residing or domiciled in Oklahoma; ATTI has no branch offices or comparable facilities in Oklahoma and has no telephone listings or mailing address in Oklahoma; ATTI has no real property, tangible personal property, or bank accounts in Oklahoma; ATTI does not direct any of its advertising specifically toward Oklahoma residents, nor does it advertise in any publications that are directed primarily toward Oklahoma residents, although on occasion, ATTI has sent nationwide mailers to companies which would have included companies with mailing addresses in Oklahoma; ATTI maintains a passive, informational internet website where interested visitors can find and contact ATTI, but products are not offered for sale nor can they be purchased through ATTI's website; no meetings of ATTI's board of directors or shareholders have ever been held in Oklahoma; no officer, agent, employee, or representative of ATTI ever traveled to Oklahoma in connection with the business of ATTI and Mr. Glass has only been to Oklahoma once solely for personal reasons.

The Glass Declaration further states that US Fleet contacted ATTI at ATTI's offices in Houston, Texas to solicit ATTI as a dealer for GPS tracking devices and service plans; that Mr. Glass, as President of ATTI, signed a dealer agreement and private label branding agreement with US Fleet in Houston, Texas and that this is the only agreement between ATTI and US Fleet.  ATTI

asserts there is no licensing agreement.  The Declaration further provides that the GPS tracking devices sold by US Fleet to ATTI were manufactured by another company, not US Fleet; that the GPS tracking devices were privately labeled, branded and sold by ATTI as the ATTI Shadow Tracker® SL; the Shadow Tracker® is a registered trade mark owned by ATTI; ATTI sold service plans for the devices under its name also; ATTI sold the Shadow Tracker® SL and service plans to its customers; the mapping website accessed by ATTI customers was branded as an ATTI website; ATTI received, paid for, labeled and resold the GPS tracking devices as the ATTI Shadow Tracker® SL at its offices in Houston, Texas, and its contacts with its customers were from its offices in Texas.  The Glass Declaration states that the ATTI Shadow Tracker ® Vision II tracking device was designed, developed and is manufactured in Houston, Texas at ATTI's facilities and was not "reverse engineered" from the Shadow Tracker® SL. *See* Glass Declaration, Exhibit 1 to ATTI's Motion to Dismiss for Lack of Personal Jurisdiction.

Plaintiff has submitted the affidavit of Jerry Hunter, Chief Executive Officer of US Fleet, to contradict the assertions of ATTI.  *See* Affidavit of Jerry Hunter, Exhibit 1 to Plaintiff's Opposition. The court notes that the Hunter affidavit does not specifically controvert ATTI's positive assertion that the Shadow Tracker® Vision II was not "reverse engineered" from the Shadow Tracker® SL.  Nor does

the Hunter affidavit dispute that ATTI has no business presence, offices, property, bank accounts or employees in Oklahoma.

The parties generally agree on the law pertaining to personal jurisdiction. US Fleet as plaintiff bears the burden of establishing personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). To obtain personal jurisdiction over a nonresident defendant, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *See* Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995). Because Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry. *See* Rambo v. American S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988). The due process clause permits the exercise of personal jurisdiction over a nonresident defendant so long as there exist "minimum contacts" between the defendant and the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.  *See* Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n. 9 (1984).

Even if a defendant's actions create sufficient minimum contacts, the court must still consider whether the exercise of personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice. Burger King Corp., 471 U.S. at 476.  This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over defendant is reasonable in light of the circumstances surrounding the case.  *See* id. at 477-78. In considering whether the exercise of jurisdiction is reasonable, the court should consider the following factors: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *See* Burger King Corp., 471 U.S. at 477.

Where there is no evidentiary hearing and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists.  Wenz v.

Memery Crystal, 55 F. 3d 1503, 1505 (10th Cir. 1995).  The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  Id.  If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.  Id.  However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.  Id.  Although plaintiff bears the burden of establishing personal jurisdiction, in the preliminary stages of litigation this burden is light.  Id.

Upon thorough consideration of plaintiff's allegations and the briefs and materials submitted by the parties, the court determines that USFleet has met its light burden at this stage and has made a *prima facie* showing of personal jurisdiction over ATTI at this stage of the proceedings.  Although a close question, the court finds that the alleged actions of ATTI, taken in their entirety, and the effect of these actions on plaintiff, an Oklahoma corporation, demonstrate a substantial connection with the State of Oklahoma.  It was apparent to ATTI that USFleet was a resident of Oklahoma when it entered into the Dealer Agreement.  The court finds that it is reasonable to conclude that ATTI was aware that USFleet could be financially harmed in Oklahoma if it breached the Dealer Agreement or otherwise engaged in the activities as alleged in the petition.  As noted above, the allegations in the complaint must be taken as true to the extent

they are uncontroverted by the defendant's affidavits, and factual disputes must be resolved in the plaintiff's favor. Considering all factors, the court concludes that the exercise of specific jurisdiction over ATTI would be not be unreasonable under the circumstances alleged. Requiring ATTI to submit to jurisdiction in this court would not offend traditional notions of fair play and substantial justice.

The court finds that a final determination of ATTI's argument that US Fleet's claim under the Oklahoma Consumer Protect Act fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) would require the resolution of factual issues that is not appropriate at this stage in the proceedings.

Accordingly, the court finds that defendant ATTI's Motion to Dismiss for Lack of Personal Jurisdiction and, Subject Thereto, Failure to State a Claim and for Lack of Subject Matter Jurisdiction **[Doc. No. 17]** should be and is hereby **DENIED**.

It is so ordered this 12th day of February, 2010.

_Tim Leonard_
TIM LEONARD
United States District Judge